IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Libby Peck, | ) | C.A. No. 5:10-2625-MBS-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Libby Peck ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and §1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the action was referred to United States Magistrate Judge Kaymani D. West for a Report and Recommendation.

## I.    Procedural History

On February 1, 2006, Plaintiff filed an application for DIB and SSI benefits due to her back pain and fibromyalgia. Administrative Transcript ("Tr.") 122-30. Plaintiff initially claimed that her disability began on July 15, 2000, but later amended her disability onset date to January 25, 2006. Tr. 9, 160. On March 29, 2006, the Commissioner denied Plaintiff's application for benefits, finding that she was not disabled. Tr. 49-53. Upon Plaintiff's request for reconsideration, the Commissioner again denied the Plaintiff's application in a letter dated June 26, 2006. Tr. 62.

On October 7, 2008, a hearing was conducted before Administrative Law Judge Richard L. Vogel ("ALJ"). Tr. 18-44. On October 30, 2008, the ALJ issued an unfavorable decision, finding that Plaintiff has not been disabled since January 25, 2006. Tr. 9-17. On August 31, 2010, the Appeals Council denied Plaintiff's request to review the ALJ decision, making the determination of the ALJ the final decision of the Commissioner. Tr. 1-3. On October 11, 2010, Plaintiff filed the instant action in federal court seeking judicial review of the Commissioner's decision. Plaintiff alleged that the ALJ failed to adequately consider her Degenerative Disc Disease ("DDD") as a severe impairment or consider DDD's impact or combined effect with Plaintiff's fibromyalgia. Plaintiff also alleged that the ALJ failed to properly evaluate the opinions of her treating physicians, Dr. Nolan and Dr. Niemer.

On January 27, 2012, the Magistrate Judge filed a Report and Recommendation in which she found that there was substantial evidence to support the Commissioner's decision and recommended that the decision be affirmed. According to the Magistrate Judge, the ALJ appropriately considered the combined effect of Plaintiff's impairments in his disability analysis. Furthermore, the Magistrate Judge found that the ALJ was within his authority to assign less than controlling weight to Dr. Nolan and Dr. Niemer's opinions, because the ALJ found their opinions to be inconsistent with the record evidence and their respective treatment notes.

## II.    <u>Standard of Review</u>

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Magistrate Judge's Report to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the

recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). The harmless error standard provides that while the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached. Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004).

In evaluating the effect of various impairments upon a disability benefit claimant, the Commissioner must consider the combined effect of a claimant's impairment and not fragmentize them. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The Commissioner's regulations require that the ALJ consider the combined effect of both severe and nonsevere medically determinable impairments in evaluating a claimant's residual functional capacity. 20 C.F.R. § 404.1545(e).

If a treating physician's medical opinion is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. SSR 96-2p; see also 20 C.F.R. § 416.927(d)(2) (providing that a treating source's opinion will be given

controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record).  A treating physician's opinion can however be accorded significantly less weight if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence.  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  The ALJ has the discretion to give less weight to the opinion of a treating physician when there is persuasive contrary evidence in the record.  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  The court's role is not to re-weigh conflicting evidence, make credibility determinations or substitute its judgment for that of the Commissioner.  Craig, 76 F.3d at 589.  In undertaking review of the ALJ's treatment of claimant's treating sources, the court should focus its review on whether the ALJ's opinion is supported by substantial evidence. Id.

### III.    Discussion

A. Plaintiff's Medical History Prior to January 2006

Although Plaintiff's alleged onset date is January 25, 2006, it is relevant to consider the origins and development of Plaintiff's alleged disability.  Plaintiff was in two car accidents in 2001 and 2002 respectively.  On October 30, 2003, Plaintiff underwent an independent medical evaluation performed by Jeffrey E. Faaberg, Sr., M.D.  Tr. 321.  In his report, he indicated that Plaintiff had been involved in two car accidents which had negatively impacted her back and spine. Dr. Faaberg noted that Plaintiff's MRI and CT scans revealed mild to moderate DDD of the cervical spine with disk protrusions at several levels.  Tr. 321-22.  Dr. Faaberg conducted a physical examination of Plaintiff and assessed that she has significant persistent pain due to disc protrusion, and facet joint arthropathy in the lumbar spine.  Tr. 323.  Dr. Faaberg also noted that Plaintiff has been treated by Dr. J. Edward Nolan ("Dr. Nolan") for pain management using

epidural steroid injections, physical therapy and a medical muscle stimulator.  Tr. 321.  Dr. Faaberg noted that following Plaintiff's second car accident, her pain has persisted in spite of nearly all treatment.  Tr. 323. Further, he noted that Plaintiff indicated that the epidural injections have had diminishing results over the past few years.  Tr. 322.  Dr. Faaberg estimated that Plaintiff's tolerance for activity was currently at the sedentary to light level.  He further noted that Plaintiff required frequent changes in position and that her tolerance of any activity was minimal.  Lastly, he indicated that Plaintiff was incapable of returning to her former employment and that any statement of employability would require the performance of a formal functional capacity evaluation. Tr. 324.

In October 2004, Plaintiff visited Dr. Nolan due to complaints of back pain.  He gave her an injection of pain medication that provided her with good pain relief until February 2005.  Tr. 247.  On March 22, 2005, Plaintiff visited with Dr. Nolan due to complaints of the back pain returning, specifically, constant pain in her lower back.  Plaintiff noted that her condition was decreased by medications and lying down.  Dr. Nolan gave Plaintiff a lumbar and thoracic facet joint injection and a sacro-iliac joint injection and continued Plaintiff on the following medications:  lioderm patch, wellbutrin, ambient, nexium, and morphine sulfate.  Tr. 246.  On July 22, 2005, Plaintiff returned to Dr. Nolan, stating that the previous injections provided pain relief for a few months, but that the pain started to return gradually.  Plaintiff noted that pain in her upper back had started to develop as well.  Dr. Nolan gave her another injection and continued her on medications.  Tr. 245.

On September 26, 2005, Plaintiff returned to Dr. Nolan, stating that the previous injection did not work very well.  Plaintiff noted that she had constant burning pain in the lower back, rating the severity of the pain 5/10.  Plaintiff noted that her pain decreased with the use of

medications, a Transcutaneous Electrical Nerve Stimulation "TENS" unit, physical therapy, and injections. Plaintiff was continued on current medications and given a prescription for lortab (another pain medicine). She was also instructed to do certain stretches and exercises at home for her lower back, and was referred to a specialist for radio frequency rhizotomy, a procedure designed to decrease and eliminate pain symptoms arising from degenerative facet joints within the spine. Tr. 244. Plaintiff returned to Dr. Nolan on October 18, 2005 for constant sharp pain in her lower back, noting that she was not able to secure an appointment for radio frequency rhizotomy, because the specialist does not accept her insurance. Plaintiff noted that her pain decreased with a TENS unit, patches, and lying down. At this appointment, Dr. Nolan gave her a steroid injection and scheduled her for laser treatment. Tr. 243.

On December 5, 2005, Plaintiff returned to Dr. Nolan, noting that she had constant burning pain in her lower back and down her right leg. Plaintiff stated that after the prior injection, she was pain free for a couple of weeks with a gradual return of pain. Dr. Nolan noted that Plaintiff had been referred by her primary physician to a rheumatologist and that her primary physician recommended that she apply for disability benefits. Dr. Nolan gave Plaintiff an injection and referred her to Dr. Gregory Niemer, M.D., ("Dr. Niemer") a rheumatologist. Tr. 242.

On December 15, 2005, Plaintiff was examined by Dr. Niemer, who noted that her symptoms were most consistent with fibromyalgia, which was likely brought on by poor quality sleep and Plaintiff's chronic back pain. He prescribed Lyrica to Plaintiff for the pain and instructed her to continue seeing Dr. Nolan for her DDD. Tr. 219.

B. Plaintiff's Medical History After January 2006 (alleged onset date)

As of January 2006, Plaintiff was working as a computer technician for Berkeley County, South Carolina, where she was required to be at her desk most of the time. Tr. 24-25. Her supervisor initially made several accommodations for her, including allowing her to use a couch in the office to lie down, permitting her to leave her desk, walk around, change positions, and do whatever she needed to get her pain level to drop. Tr. 25. However, Plaintiff was still missing one or two days per month and was coming in late or leaving early three or four days a week due to pain. Tr. 26-27. When this became excessive, she was given a letter indicating that if she could not work forty hours every week, she would have to be terminated. On January 25, 2006, she was terminated. Plaintiff has used January 25, 2006 as her alleged onset date. Tr. 25.

On February 2, 2006, Dr. Nolan wrote an opinion letter regarding Plaintiff, stating that she had been a patient of Trident Pain Center since December 2001. He indicated that Plaintiff had been diagnosed with several back and joint diseases which he opined caused Plaintiff to have severe chronic pain. Dr. Nolan indicated that Plaintiff was unable to work due to the limitations caused by her pain and restricted mobility.

On March 27, 2006, medical examiner ("ME") William Hopkins reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC"). He opined that Plaintiff could lift 40 pounds occasionally and 25 pounds frequently and that she was able to stand, walk and sit up for up to six hours each with normal breaks in an eight-hour workday. He opined that Plaintiff should avoid exposure to hazards because of her medication's side effects but placed no additional limitations on Plaintiff's RFC. Tr. 286-289.

In May 2005, Plaintiff completed a disability questionnaire (Tr. 178-85). Plaintiff stated that she had bad days and good days as far as body pain. On her good days, she indicated that she did a wide range of housework, although it was taking her longer to do now than it did before

her claimed disability. Tr. 180-81. She noted that on bad days, her pain could not be managed through medication or otherwise, so she stayed in bed without going outside. Tr. 181.

On June 26, 2006, ME Frank Ferrell also reviewed the record and evaluated Plaintiff's physical RFC, finding that she had the same limitations ME Hopkins opined in his March 2006 assessment. (Tr. 309-316). ME Ferrell, however, noted that Plaintiff had severe musculoskeletal issues, but that the pain was successfully managed with treatment and prescription medication. Tr. 310. On August 7, 2006, Plaintiff received a steroid injection and a sacro-iliac injection from Dr. Nolan. Tr. 328.

On August 21, 2006, Dr. Niemer wrote an opinion letter on behalf of Plaintiff, noting that he had treated Plaintiff for fibromyalgia for approximately nine months and that she suffered diffuse myalgias (muscle-related pains), severe fatigue, and was on medical treatment to decrease her pain and improve her sleep quality. Tr. 320. Dr. Niemer opined that Plaintiff had the following limitations on her work capabilities: lifting no more than 20 pounds, walking no greater than 20 minutes at a time, sitting no greater than 30 minutes at a time, and standing no greater than 20 minutes at time. Id. Dr. Nolan also wrote a letter on August 21, 2006, stating that Plaintiff had been his patient for almost five years. Dr. Nolan diagnosed her with thoracic and lumbar facet arthropathy, lumar radiculitis, and SI joint pain and opined that her conditions were permanent and caused her to have severe chronic pain. Dr. Nolan also indicated that Plaintiff "was unable to return to work in any significant capacity due to the limitations caused by her pain and restricted mobility." Id.

On November 8, 2006, Plaintiff visited with Dr. Nolan's physician's assistant, Carol D. Knowles ("PA Knowles") due to pain in her lower back, right hip, and right leg. Plaintiff indicated that the August 7, 2006 steroid and sacro-iliac injection provided her with good relief,

but only for a few months. Plaintiff indicated that her condition is decreased by massage therapy, pain medications, and resting. Plaintiff was referred to a massage therapist and was continued on treatment, including injections and her current medications. Tr. 328.

On February 13, 2007, Plaintiff received massage therapy at the Trident Pain Center, where Dr. Nolan had his practice, and indicated that she had significant pain relief from the prior massage but that her condition had regressed subsequently due to her being out of town for one week. Tr. 329. On February 27, 2007, Plaintiff received another massage from Trident Pain Center and noted that her condition has improved by 80-90% since having massage therapy and that most of the pain comes with overactivity. Tr. 331. On March 9, 2007, Plaintiff received another massage and noted that she had been doing well until she had to lift her 70 pound dog when he was undergoing surgery. At this appointment, Plaintiff stated that the full right side of her back from the hip to under arm was in pain.

On April 5, 2007, Plaintiff went to receive massage therapy and noted that the pain in her lower back had decreased; however, she was having severe pain in her upper shoulders, right arm, and "pain that wraps from back to the front under ribs," noting that the pain level was at 7-8. The massage therapist recommended stretching at home. Tr. 335. On April 19, 2007, Plaintiff returned for massage therapy and noted that she had good days and bad days. She said that her legs were doing better and that most of her pain was across the top of her pelvis, along the spine and under her arms, noting that the pain was at a level of 7. She noted that she recently raked the yard, which caused her legs to tighten up; however, she stated that her condition improved with resting and a heat pad. After the massage therapy session, Plaintiff noted that her pain level went to 1 or less. Tr. 337.

On May 4, 2007, Plaintiff received massage therapy and told the therapist she was feeling a little better and that her leg pain was not as bad. Tr. 339. She noted that home stretches were helping with the pain and rated her pain level as 3 or 4/10. She also indicated she had not been taking as many pain medications or receiving as many injections. Id. At the close of the session, Plaintiff indicated she obtained great release in her legs. Id. At a May 18, 2007 massage session, Plaintiff reported that she had experienced significant pain relief from the prior massage, but that a few areas were still very aggravated. She noted that the level of pain varied from day to day. Tr. 341. At the close of the session, Plaintiff reported that she felt great. Id.

On May 24, 2007, Plaintiff saw Dr. Nolan and complained of both dull and sharp constant aching, burning, throbbing and shooting pain, at a severity level of 6/10. She noted that lying down helped with pain relief and that sitting activity aggravated the pain. Tr. 343. Dr. Nolan noted that Plaintiff had experienced 95% pain relief immediately after the August 7, 2006 injection. He also noted that Plaintiff was still benefiting from relief but that the pain in now on the left side of her body. Id. Plaintiff was given a steroid injection at this appointment. Tr. 344.

On June 4, 2007, Plaintiff received massage therapy at the Trident Pain Center and noted that the previous injection did not work very well to relieve her pain. She stated that each time her leg muscle relaxed, it would subsequently lock up, even without any activity. She also noted that her pain level is very intense at times. Tr. 346. After the end of the session, Plaintiff had some release from pain. Id. On June 19, 2007, Plaintiff received massage therapy again, noting that she had significant pain relief from the last massage therapy session. Plaintiff, however, indicated that the sides and back of her legs were always staying very tight and causing her pain. Tr. 348.

On July 2, 2007, Plaintiff received massage therapy and noted that she will have good days with minimal or no pain and then her pain will be triggered by an activity like mowing the grass or riding the mower, after which she can feel the tightness again. Plaintiff noted that if she can get her muscles to relax after a triggering event, she can eventually return to minimal or no pain. Tr. 350. On July 16, 2007, Plaintiff received massage therapy again and noted that she had significant pain relief from the last massage therapy session but that within a few days of the massage, her leg muscles locked up. Plaintiff noted that there was no treatment or activity she could do that would take the pain or tightness away. She noted that her lower and mid-back, however, were feeling very good.

On July 31, 2007, Plaintiff received massage therapy and noted that she had received significant pain relief from the prior massage. Tr. 354. However, Plaintiff indicated that when she walked in a dry creek bed, her left hamstring and calf muscles tightened. Afterwards, Plaintiff was in bed with ice and heat for a few days trying to get release from the pain. Id.

Plaintiff saw Dr. Nolan on August 7, 2007, and identified left hip and leg pain with a pain level of 3/10. Tr. 356. Dr. Nolan noted that Plaintiff received pain relief for several months after the last injection, but that the pain has slowly returned since then, despite significant improvement. Dr. Nolan noted that Plaintiff had "responded well to the last injection and still fe[lt] the benefits. The massages have also helped." (Tr. 357). Dr. Nolan instructed Plaintiff to continue to see Dr. Niemer for medication management and noted she could return to Trident Pain Center for "periodic steroid injections" and massages, as needed. Id.

On June 12, 2008, Dr. Niemer wrote another opinion letter on behalf of Plaintiff, noting she saw him every two-to-three months for medical management. Tr. 319. He indicated that Plaintiff's fibromyalgia was "complicated by degenerative disc disease in the lumbar spine and

chronic depression." Id. He found she had diffuse myalgias and severe fatigue daily and opined that they "greatly" affected her activities of daily living. Id. Dr. Niemer indicated Plaintiff had poor sleep and pain in her neck, shoulders, back, and extremities that worsened with activity. Id. As a result of her conditions, Dr. Niemer opined Plaintiff had the following "permanent" limitations: lifting no greater than 20 pounds, walking no more than 20 minutes at a time, or sitting no more than 30 minutes at a time "without change in her position." Id. He limited her to pushing and pulling no more than 30 pounds, repetitive movements lasting no longer than 20 minutes, and only rare bending, stooping, and crawling. Dr. Niemer then opined that Plaintiff was "unable to perform any type of work on a regular basis." Id.

Plaintiff returned to Dr. Nolan on July 14, 2008 and described having constant pain in her middle and lower back, right ribcage, and right leg. Tr. 358. Plaintiff told Dr. Nolan that the epidural injection she received in May 2007 had relieved approximately 80% of her pain for a period of time but that intermittent episodes of intense pain occurred a few months ago and that significant pain had returned a few days ago. Id. Upon examination, Dr. Nolan identified Plaintiff's greatest pain as being radicular leg pain, which he treated with a steroidal injection. Tr. 360. Plaintiff saw PA Knowles on July 16, 2008 and reported constant pain in her legs and lower back, indicating that she only received moderate pain relief from the July 14, 2008 injection. Tr. 361. PA Knowles referred Plaintiff for a functional capacity evaluation ("FCE") to determine her work capabilities, noting that she will determine Plaintiff's permanent employment restrictions after the FCE. Id.

On September 16, 2008, Sports Plus PT performed the FCE. Tr. 364-74. The FCE indicated Plaintiff was "capable of sustaining the Sedentary level of work for an 8-hour day/40-hour week." Tr. 364. The FCE noted that Plaintiff presented "self-limiting" behavior such as

stating she is afraid of causing pain or damage if she pushes further with regard to tasks that required her to lift, carry, push or pull weight. Tr. 368. The examiner noted that Plaintiff's "self-limiting and inconsistent behavior" during the evaluation influenced the examiner's findings; therefore, the sedentary work level indicated the minimum Plaintiff could perform. With that caveat, the FCE indicated Plaintiff could exert up to 10 pounds of force occasionally and had no significant limitations on postural activities, other than her being restricted to only occasional standing. Tr. 367-68. The FCE tested Plaintiff's sitting and standing tolerances for a period of five minutes. During those five minutes, Plaintiff reported a pain score of 4/10 in the lower back and hips, which the FCE designated as "within normal limits" and a pain score of 5/10 in the right leg while standing. Tr. 373.

On September 17, 2008, Dr. Niemer provided an opinion letter on behalf of Plaintiff, stating that "due to her inability to sit, stand, or walk except for limited periods of time [] she cannot do a combination of these positions to get through an 8 hour day," noting that "she has to recline periodically throughout the day for relief from pain." Tr. 390. He also opined that Plaintiff would "suffer from excessive absenteeism [at any place of employment] and could be absent as often as one to two times per week due to chronic flare-ups." Id. Dr. Niemer concluded that Plaintiff "would not be capable of even performing a sedentary type job with a sit/stand option due to her limitations of sitting, standing or walking and excessive absenteeism." Id.

On September 28, 2009, Dr. Nolan provided an opinion letter stating that due to Plaintiff's chronic pain conditions, she is unable to work an eight hour day even with a combination of sitting, standing, and walking, noting that she must periodically recline during the day for pain relief. Tr. 392. Dr. Nolan also noted that Plaintiff is taking multiple

medications, including narcotics, which can cause cognitive deficits and that it was "very likely" that Plaintiff would miss greater than four days of work per month due to increased pain. Id.

### C. ALJ's Administrative Hearing

On October 7, 2008, the ALJ held an administrative hearing, where Plaintiff testified about her pain symptoms. Specifically she noted that she was currently using a number of medications for pain relief, including a TENS unit, which required her to lie down while she is using it. Tr. 29-30. She noted that her medications made her groggy and made it difficult to focus and remember things. Tr. 28. Plaintiff noted that her pain was typically at a level of 4/10, but that she sometimes had flare-ups of pain at a level of 6/10 which required her to lie in bed. Tr. 32. She testified that she spent 50% of the day reclined in bed on an "average" day, and that she stayed in bed all day on "bad days." Tr. 33. Plaintiff noted that she was in severe pain and in bed for two days following the FCE. Plaintiff also noted that she can lift nothing heavier than a gallon of milk.

At the hearing, the vocation expert ("VE") testified that someone with a RFC of sedentary work with a sit/stand option at will could perform jobs such as surveillance monitor and machine tender which are available in sufficient numbers in the national and local economy. Tr. 40-41. However, the VE also testified that if an individual was absent from her work station for two or three hours per day to walk or recline, or was absent one day per week, no jobs would exist for that individual. Tr. 34.

### D. ALJ's Findings

The ALJ found that Plaintiff's only severe impairment was fibromyalgia. The ALJ noted that Plaintiff's DDD has no more than a minimal impact on Plaintiff's ability to engage in work-like activities and is therefore a non-severe impairment. The ALJ noted that Plaintiff had an

MRI in October 2003 which revealed mild to moderate degenerative disc protrusions, but that the claimant has not sought orthopedic treatment since that time. Furthermore, the ALJ noted that the medical record after the alleged onset date contains no references to DDD as the cause of the pain other than Dr. Niemer's suggestion that Plaintiff's fibromyalgia is complicated by her DDD. Ultimately, the ALJ found that assessing the Plaintiff's overall allegations of pain symptoms as separate results of DDD and fibromyalgia was duplicative.

The ALJ found that Plaintiff had the RFC to perform sedentary exertional work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) as the ability to lift/carry 10 pounds, stand 2 hours in an 8 hour workday, provided she is permitted to sit or stand at will for up to 50% of the workday, and perform work which involves no climbing, crawling, bending or squatting, and only occasional crouching and stooping. Lastly, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. As such, the ALJ concluded that Plaintiff did not have a disability.

The ALJ found Plaintiff's subjective testimony not credible insofar as it was inconsistent with the FCE performed by Sports Plus on September 16, 2008. In particular, the ALJ noted that Plaintiff's testimony of her physical limitation was inconsistent with the FCE, which found that Plaintiff was able to occasionally lift, push and pull over 10 pounds. The FCE also noted that Plaintiff had the ability to sit, kneel, squat, crouch, climb stairs, walk, crawl and climb a ladder, which was inconsistent with Plaintiff's characterization of her capabilities. The ALJ also noted that Plaintiff's testimony that she was in severe pain after the FCE and called Dr. Niemer for pain medication is not supported by office records of telephonic requests, which indicate that there were no phone requests from Plaintiff in September 2008. Tr. 14. The ALJ also found that

a person with severe and chronic pain, including restricted mobility, would not be lifting a 70 pound dog, raking the yard, mowing the lawn, or walking in a creek bed. The ALJ also noted that there were days when Plaintiff told Dr. Nolan that she felt zero to minimal pain, which contradicted her hearing testimony. The ALJ ultimately found Plaintiff's subjective testimony as to her pain symptoms not credible.

The ALJ also found that the opinion testimony submitted by Dr. Niemer and Dr. Nolan was not entitled to controlling weight because of contrary medical evidence and internal inconsistencies in their respective opinions. The ALJ reviewed Dr. Niemer's opinion letters and noted that in his first two opinions, rendered in 2006 and 2008, he indicated that plaintiff had lifting, carrying, standing, and walking capabilities that were consistent with the RFC that the ALJ ascribed to Plaintiff. Tr. 15. The ALJ noted that nowhere in those earlier opinions did Dr. Niemer indicate that performing tasks such as lifting, walking, standing, sitting, pushing or pulling would cause debilitating pain. The ALJ then considered Dr. Niemer's September 2008 opinion letter in which he indicated that Plaintiff could not get through an eight-hour day and that her limitations of sitting, standing, or walking and excessive absenteeism would make her unable to perform at even a sedentary job with a sit/stand option. Tr. 14. He also noted that Dr. Niemer's September 2008 report was an unsupported departure from the earlier opinions regarding Plaintiff's capabilities and that Dr. Niemer did not state that he was retracting his earlier opinions. Ultimately, the ALJ afforded Dr. Niemer's opinions little weight based on inconsistencies within the reports and the opinion letters.

The ALJ also gave little weight to Dr. Nolan's opinions, finding that they were inconsistent with the objective medical evidence, including his own treatment notes. The ALJ noted that one month before Dr. Nolan's opinion that Plaintiff was "unable to work" because of

her pain and restricted mobility, his treatment notes indicated that Plaintiff had experienced good pain relief from the December 2005 injection. The ALJ also cited to other records from her treatments at Trident Pain Center which noted that Plaintiff obtained good pain relief from massage therapy and injections. Lastly, the ALJ noted that Dr. Nolan's records indicated that Plaintiff had lifted her 70 pound dog, mowed her law, and walked in a creek bed. The ALJ found this evidence to be contrary to Dr. Nolan's finding that her debilitating pain made it impossible for her to get through an eight-hour work day. Lastly, the ALJ noted that Dr. Nolan's testimony that Plaintiff could not do any regular work was undercut by the fact that Plaintiff had substantial pain relief from injections and massages without the use of narcotic pain medicine that could otherwise impair her mental functioning.

E. The Magistrate Judge's Findings

According to the Magistrate Judge, the ALJ appropriately considered the combined effect of Plaintiff's fibromyalgia and DDD when evaluating her pain symptoms. Furthermore, the Magistrate Judge found that the ALJ articulated sufficient reasons for assigning less than controlling weight to Dr. Nolan and Dr. Niemer's opinions regarding Plaintiff's functional capacity. The Magistrate Judge noted that the ALJ found Dr. Niemer's August 2006 and June 2008 letters to be consistent with the FCE. As such, the ALJ found Dr. Niemer's September 2008 letter, which further explained Plaintiff's functional limitations, to be inconsistent with the prior letters and unsupported. The Magistrate Judge also noted that the ALJ appropriately discounted Dr. Nolan's opinion, because Dr. Nolan's January 2006 letter in which he noted Plaintiff was unable to work because of her pain and restricted mobility was in contrast with his treatment notes that Plaintiff experienced good relief from the steroid injections and massage therapy.

F. Plaintiff's Objections

On February 3, 2012, Plaintiff filed objections to the Report and Recommendation, to which the Commissioner filed a reply on February 21, 2012. First, Plaintiff alleged that the Magistrate Judge erroneously adopted the ALJ's determination that Plaintiff's DDD was not a severe impairment and that Plaintiff's DDD only had a minimum impact on Plaintiff's pain symptoms. Plaintiff contends that the medical records clearly indicate that her back pain was originally caused by DDD, even before her fibromyalgia diagnosis and that DDD continued to cause her pain through the alleged onset date. Further, Plaintiff alleges that the ALJ's failure to consider the impact of DDD on her pain symptoms is not a matter of harmless error because the mistake affected the ALJ's entire Step 3 analysis, which required the ALJ to consider the well documented effects of Plaintiff's DDD.

Second, Plaintiff alleged that the Magistrate Judge made an erroneous finding that substantial evidence supported the ALJ's decision not to give controlling weight to the opinions of Plaintiff's treating physicians. Plaintiff contends that the opinion letters cited by the ALJ as being not credible due to "persuasive contrary evidence" in the medical records are in fact consistent with and are supported by the medical treatment records. Plaintiff alleges that all of Dr. Niemer's opinion letters indicated that Plaintiff had significant limitations in lifting, carrying, standing and walking and that the September 2008 letter simply put those limitations in the context of an 8-hour day. Plaintiff also alleges that the ALJ's decision to discredit Dr. Nolan's testimony because Plaintiff sometimes obtained relief from treatment is unavailing because Plaintiff's relief was never permanent. Plaintiff alleges that the ALJ's reliance on occasional reports of improvement is misplaced when contrasted with the overwhelming evidence of chronic and continuous pain. Likewise, Plaintiff contends that the few episodes of activity cited

by the ALJ as inconsistent evidence of Plaintiff's symptoms, namely lifting her dog, walking in a creek and doing yard work were mischaracterized because Plaintiff noted that each of those episodes were followed by severe pain for which she had to seek treatment.

G. Analysis

Plaintiff's first objection is without merit. The ALJ satisfied the requirement that he consider the total effect of Plaintiff's impairments on her ability to work. Even if the ALJ failed to adequately consider whether DDD was a severe impairment and what its specific impact was in the Step 3 disability analysis, this is a harmless error. As Plaintiff indicates, it is true that the medical record shows that Plaintiff's pain symptoms were caused by a combination of DDD and fibromyalgia. Plaintiff was seeking pain management and took medication for all of her pain symptoms irrespective of the particular cause. The ALJ did not separate or consider only pain symptoms attributable to fibromyalgia. Even if Plaintiff's DDD was a significant cause of her back pain, this fact is irrelevant in the ALJ's analysis because he considered all of Plaintiff's pain symptoms as a whole in determining her RFC.

Plaintiff's second objection is also without merit. The court agrees with the Magistrate Judge's finding that the ALJ had substantial evidence to discredit the treating physicians' opinions. Furthermore, the court agrees with the Magistrate Judge's finding that the ALJ sufficiently explained his reasons for discounting the opinions. The ALJ reviewed Dr. Niemer's three opinions and noted that the first two opinions indicated that Plaintiff had lifting, carrying, standing, and walking capabilities that were consistent with the FCE. The ALJ noted that nowhere in the earlier two opinions did Dr. Niemer indicate that performing such tasks would cause Plaintiff debilitating pain or that she was unable to avoid pain by changing position. Dr. Niemer's September 2008 opinion for the first time opined that Plaintiff would suffer excessive

absenteeism at work due to chronic flare-ups of pain and would be unable to perform a sedentary job with a sit/stand option. The ALJ noted that Dr. Niemer's treatment notes did not reflect changes in Plaintiff's condition that would support the new opinion. The court finds that the ALJ was within his authority to afford Dr. Niemer's testimony little weight based on inconsistencies among the opinions themselves and between the most recent opinion and the corresponding treatment notes.

The ALJ had substantial evidence to discredit Dr. Nolan's opinion as well. The ALJ sufficiently articulated his reasons for discrediting Dr. Nolan's opinion that Plaintiff is unable to work due to limitations caused by her pain and restricted mobility. The ALJ found that Dr. Nolan's treatment notes contradicted Dr. Nolan's opinion. Specifically, the ALJ cited to Dr. Nolan's treatment notes, which indicated that Plaintiff experienced significant pain relief from injections and massage therapy. The ALJ noted that in January 2006, one month before Dr. Nolan issued his opinion that Plaintiff was "unable to work," Dr. Nolan's treatment notes indicated that Plaintiff had experienced good pain relief from the December 2005 facet-point injections. The ALJ also cited to Dr. Nolan's February 2007 treatment notes which indicated that Plaintiff's pain symptoms had improved "80-90%" through massage therapy. The ALJ further cited to Dr. Nolan's July 2008 treatment notes, which indicated that Plaintiff experienced pain relief from epidural injections. Lastly, the ALJ noted that Dr. Nolan's treatment notes indicated that Plaintiff had attempted to lift her dog, mow the lawn and walk in a creek bed. Even considering Plaintiff's contention that these activities caused her significant pain, the ALJ was within his authority to find that performing these activities at all, as reported to Dr. Nolan, were contrary to Dr. Nolan's opinion that Plaintiff's pain made her unable to work. The court

finds that the ALJ had substantial evidence, which was sufficiently articulated in the ALJ's opinion, to justify discrediting Dr. Niemer's and Dr. Nolan's opinions.

## **Conclusion**

The court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference. For the reasons stated herein and in the Report and Recommendation, the decision of the Commissioner is affirmed.


**IT IS SO ORDERED.**


s/ Margaret B. Seymour
Margaret B. Seymour
Chief United States District Judge

March 20, 2012
Columbia, South Carolina